UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN CARLOS V.B.,[1] | No. 1:26-cv-03077-TLN-SCR |
| Petitioner, | |
| v. | |
| CHRISTOPHER CHESTNUT, et al., | **ORDER** |
| Respondents. | |

This matter is before the Court on Petitioner Juan Carlos V.B.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition"). (ECF No. 1.) Respondents filed an opposition. (ECF No. 9.) Petitioner replied. (ECF No. 10.) For the reasons set forth below, the Petition is GRANTED.[2]

///

---

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] On May 1, 2026, the Court granted the Petition and ordered Respondents to immediately release Petitioner (ECF No. 11) this Order now sets forth the Court's reasoning.

1

## I.   FACTUAL BACKGROUND

This matter arises out of Petitioner's challenge to his civil immigration detention. Petitioner is not a citizen of the United States, but he has resided here for over two years. (*See* ECF No. 1.) On November 28, 2023, Petitioner was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) with a Form I-94. (*Id.* at 2; ECF No. 1-1 at 2.) Since his parole, Petitioner states he has lived in the United States without incident: He complied with all conditions imposed by immigration authorities and lived in the community without any allegation that he posed a danger or a risk of flight. (ECF No. 1 at 2.) Petitioner also applied for immigration relief to adjust his status. (ECF No. 1-2.)

Nevertheless, about March 3, 2026, Petitioner was arrested in Florida following a routine traffic stop and taken into immigration custody. (ECF No. 1 at 2.) Petitioner asserts he received no prior notice, no explanation, and there were no changed circumstances justifying this re-detention. (*Id.*) Petitioner also did not receive a notice terminating his parole. (*Id.* at 6.) Respondents detained Petitioner for over two months without a custody hearing. (*Id.*) Petitioner challenged the lawfulness of his civil immigration detention through the instant Petition and a Motion for Temporary Restraining Order. (ECF Nos. 1, 2.)

## II.   STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

### III.    ANALYSIS

Petitioner claims his detention violates the Fifth Amendment Due Process Clause.[3] (ECF No. 1 at 9–10.)  The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas,* 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

#### i.    Liberty Interest

"[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'"  *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause."  *See Rico-Tapia v. Smith*, No. 25-CV-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025).  Liberty interest may be strengthened over time.  *See, e.g., Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner has a clear liberty interest here.  *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause").  Since he was lawfully paroled into the country,

---

[3]    Petitioner also makes an Administrative Procedure Act claim (ECF No. 1 at 10), however, for judicial economy, the Court declines to rule on this second claim seeking duplicative relief.

Petitioner has established a life in the United States, found gainful employment, and worked to support his family.  Moreover, "the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original); *see also Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("[A] noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody.").

In opposition, Respondents argue Petitioner has no right to freedom because his detention is mandated by statute.[4]  (ECF No. 9.)  However, a clear exception to mandatory detention is humanitarian parole under 8 U.S.C. § 1182(d)(5)(A).[5]  The U.S. Department of Homeland Security ("DHS") may temporarily grant urgent humanitarian parole to a noncitizen on a case-by-case basis, where either "urgent humanitarian reasons" or a "significant public benefit" justify their parole, and the noncitizen "present[s] neither a security risk nor a risk of absconding."  8 C.F.R. § 212.5(b).  Courts in this district and across the Ninth Circuit routinely find that individuals who have been paroled into the United States under § 1182(d)(5)(A) have a clear interest in remaining out of custody that is protected by the Fifth Amendment.  *See Chavarria v. Chestnut*, No. 1:25-CV-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025) (collecting cases).  Petitioner's liberty interest does not evaporate when a term of parole expires. *See Caisa Telenchana v. Hermosillo*, No. 2:26-CV-00363, 2026 WL 696806, at *7 (W.D. Wash. Mar. 12, 2026) (internal citations omitted) (citing 8 C.F.R. § 212.5(e)(2)(i)).  With a protectable liberty interest, the Court next turns to the procedural safeguards that were owed to Petitioner.

---

[4]    Respondents cite to 8 U.S.C. § 1225(b)(1) but by the plain language of the statute § 1225(b)(1) does not apply to Petitioner because he was both paroled into the United States and he has resided here for more than two years.  8 U.S.C. § 1225(b)(1)(A)(iii)(II).  Thus, the Court assumes Respondents intended to cite § 1225(b)(2).

[5]    Petitioner has produced a Form I-94 showing he was granted parole for a term of two years, valid through November 25, 2025.  (ECF No. 1-1 at 2.)  Petitioner's Form I-94 shows his class of admission is "DT" (*id.*), which is the code for humanitarian parole under § 1182(d)(5). *See Noori v. LaRose*, No. 25-CV-1824, 2025 WL 2800149, at *3 (S.D. Cal. Oct. 1, 2025).

*ii.    Procedures Required*

To determine what procedures or process is due, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. Despite his interest in maintaining his liberty, Petitioner was detained for over two months without any opportunity to be heard as to the justification of his detention. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any process, either pre- or post-detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Here, Petitioner is not subject to any order of removal; his immigration proceedings are still pending. Petitioner asserts, and Respondents do not dispute, that he has never been convicted of a crime. Moreover, Respondents do not contend that Petitioner is a danger or a flight risk. Indeed, immigration authorities found that Petitioner was not a danger or a flight risk to when they paroled him in 2023. *See* 8 C.F.R. § 212.5(b). Respondents do not point to any changed circumstances, while Petitioner establishes two years of compliance. No individualized determination of custody has been made here to justify his re-

5

detention, as required under 8 C.F.R. § 212.5(e)(2)(i). *See Caisa Telenchana*, 2026 WL 696806, at *7. Without any showing of a legitimate interest to detain Petitioner, the Court finds there is a serious likelihood Petitioner was erroneously deprived of his liberty interest. The probative value of additional procedural safeguards is high and this factor weighs sharply in favor of Petitioner. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Although the Court recognizes the government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards. Notice and custody determination hearings are routine processes for Respondents. (Indeed, they are the general processes required to terminate humanitarian parole under 8 C.F.R. § 212.5(e).) Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal. It would also be less of a fiscal and administrative burden for Respondents to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

The Court finds due process required Respondents to provide notice and a pre-deprivation hearing. The United States Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). The Court describes post-deprivation remedies as the "special case" where those are "the only remedies the State could be expected to provide." *Id.* at 129. Respondents have not provided any substantive opposition to the contrary, nor do they argue that Petitioner should be a "special case," nor do they supply a justification for Petitioner's detention. (*See generally* ECF No. 9.)

Yet, Petitioner was not provided any notice, nor was he given a pre- or post-deprivation hearing in over two months of detention. Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

## IV.   CONCLUSION

Respondents violated the Fifth Amendment Due Process Clause in Petitioner's detention. Accordingly, IT IS HEREBY ORDERED:

1. The Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.[6]

2. Petitioner's Motion for Temporary Restraining Order (ECF No. 3) is denied as moot.

3. To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED from re-detaining Petitioner absent compliance with constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that the government's interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs his constitutionally protected interest in remaining free from detention. *Zadvydas*, 533 U.S. at 690; *Hernandez*, 872 F.3d at 990.  At any such hearing, Petitioner shall be allowed to have counsel present.

4. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: May 5, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] Petitioner also seeks an award of attorney's fees and costs under the Equal Access to Justice Act.  (ECF No. 1 at 12.)  The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.